KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
HOWARD WEITZMAN (SBN 38723)
hweitzman@kwikalaw.com
MICHAEL J. KUMP (SBN 100983)
mkump@kwikalaw.com
ALAN KOSSOFF (SBN 150932)
akossoff@kwikalaw.com
ZACHARY T. ELSEA (SBN 279252)
zelsea@kwikalaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone: 310.566.9800
Facsimile: 310.566.9850

Attorneys for Defendant
DANIEL FEGAN

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| INDEPENDENT SPORTS & ENTERTAINMENT, LLC, a limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>DANIEL FEGAN, an individual,<br><br>Defendant. | Case No. 2:17-cv-2397 AB (PJWx)<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[Request for Judicial Noticed Filed Concurrently Herewith]**<br><br>Date: May 1, 2017<br>Time: 10:00 a.m.<br>Courtroom: 7B<br><br>Complaint Removed: March 28, 2017 |

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 1, 2017, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 7B in the United States District Court for the Central District of California, located at 350 West First Street, Los Angeles, California 90012, the Honorable Andre Birotte, Jr., presiding, Defendant Daniel Fegan ("Fegan") will appear and move the Court for an Order pursuant to Fed. R. Civ. P. 12(b)(6) dismissing Plaintiff's Complaint for Injunctive Relief (Dkt. 1-1) on the ground that the single cause of action asserted therein fails to state a claim upon which relief can be granted.

Defendant's Motion is based upon this Notice, the attached Memorandum of Points and Authorities, all papers and pleadings on file herein, on the records and documents of which Defendant asks the Court to take judicial notice, and on such other oral and documentary evidence as the Court may receive at or before the hearing on this Motion.

**PLEASE TAKE FURTHER NOTICE** that this Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on March 29, 2017.

DATED: March 31, 2017

Respectfully submitted,

KINSELLA WEITZMAN ISER
KUMP & ALDISERT LLP

By: /s/ Michael J. Kump
Michael J. Kump
Attorneys for Defendant DANIEL FEGEN

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1
II. BACKGROUND ........ 2
III. LEGAL STANDARD ........ 3
IV. ARGUMENT ........ 4
A. The NBPA Has The Sole Authority to Determine Who May Serve as an NBPA Certified Player Agent Under the NLRA. ........ 4
B. Plaintiff's Complaint Impermissibly Seeks to Terminate or Limit Fegan's Right to Represent and Sign NBPA Players. ........ 8
V. CONCLUSION ........ 11

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

# TABLE OF AUTHORITIES

**Page**


**FEDERAL CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................................ 4

*Collins v. Nat'l Basketball Players Ass'n*,
850 F. Supp. 1468 (D. Colo. 1991), *aff'd*, 976 F.2d 740 (10th Cir. 1992) passim

*H. A. Artists & Assocs., Inc. v. Actors' Equity Ass'n*,
451 U.S. 704, 101 S. Ct. 2102, 68 L. Ed. 2d 558 (1981) .................................. 5

*Holmes High Rustler, LLC v. Gomez*, No. 15-CV-02086-JSC,
2015 WL 4999737, at *7 (N.D. Cal. Aug. 21, 2015) ........................................ 4

*Morio v. N. Am. Soccer League*,
501 F. Supp. 633 (S.D.N.Y.), *aff'd*, 632 F.2d 217 (2d. Cir. 1980) .................... 9

*Neitzke v. Williams*,
490 U.S. 319, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) ................................ 4

*NLRB. v. Allis-Chalmers Mfg. Co.*,
388 U.S. 175, 87 S. Ct. 2001, 18 L. Ed. 2d 1123 (1967) .................................. 4

*Parks Sch. of Business, Inc. v. Symington*,
51 F.3d 1480 (9th Cir. 1995) ............................................................................ 4

*Steinberg, Moorad & Dunn v. Dunn*,
CV 01-7009 RSWL at 2 (C.D. Cal., Feb. 6, 2003) (Dkt. 1033) ..................... 10

*White v. Nat'l Football League*,
92 F. Supp. 2d 918 (D. Minn. 2000) ................................................................. 5

**STATUTES**

California Code of Civil Procedure, §§ 525, et seq. ................................................... 2

Federal Rule of Civil Procedure 12(b)(6) ......................................................... 3, 4, 11

**OTHER AUTHORITIES**

National Labor Relations Act (NLRA) 29 U.S.C. §§ 152, 159(a) ...................... 4, 5, 9

NBA Collective Bargaining Agreement, Article XXXVI .............................. 5, 6, 7, 9

NBPA Player's Association's Agent Regulation Program ................................ 6, 7, 8,

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Complaint for Injunctive Relief (Dkt. 1-1) filed by Plaintiff Independent Sports & Entertainment LLC ("ISE") states only one cause of action and seeks only one form of relief, namely, an injunction against Defendant Daniel Fegan ("Fegan") to prevent him from continuing to act as an National Basketball Association ("NBA") Player Agent certified by the National Basketball Player's Association ("NBPA"). There is a fatal flaw, however, with Plaintiff's Complaint: it seeks relief that can only be determined and issued by the NBPA. With all due respect, no court, state or federal, can grant the injunctive relief sought by Plaintiff.

As a result, Plaintiff's Complaint fails as a matter of law to state a claim upon which relief can be granted, and must therefore be dismissed. As shown below, only the NBPA has the power and authority, under settled federal law, to determine whether Fegan (or anyone else) may or may not serve as an NBPA certified Agent for any individual NBA player, and to take any action against Fegan in that regard. *See Collins v. Nat'l Basketball Players Ass'n*, 850 F. Supp. 1468, 1471 (D. Colo. 1991), *aff'd*, 976 F.2d 740 (10th Cir. 1992).

Plaintiff's pleadings are littered with allegations aimed at convincing the Court that Fegan was rightfully terminated from his position as President of ISE Basketball and should be barred from competing with Plaintiff until February 13, 2018. Significantly, Plaintiff does not allege that the NBPA has taken any action against Fegan. But all of these factual issues are irrelevant to the legal issue presented by this motion, which must be determined solely under federal labor law and the Collective Bargaining Agreement (CBA) between the NBA and the NBPA.

The injunctive relief sought by Plaintiff interferes with Fegan's right as an NBPA certified Player Agent to represent NBA players, and to solicit, sign, and receive NBA players as new clients on a going forward basis. Thus, Plaintiff's Complaint impermissibly usurps the NBPA's authority and must be dismissed.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

## II. BACKGROUND

Defendant Fegan is a well-known NBPA certified Agent who represents high profile NBA players. (Compl. ¶¶ 5, 25 (Dkt. 1).) Plaintiff ISE is a sports management company that represents athletes in the NBA and other professional sports leagues. (*Id.* ¶ 21.) On March 15, 2013, Fegan signed an Employment Agreement to be the President of ISE Basketball, Plaintiff's basketball division, and around the same time, Fegan sold certain assets from his prior sports management business to Plaintiff pursuant to the Asset Purchase and Contribution Agreement ("APA"). (*Id.* ¶¶ 6, 8, 29-30.)

On March 10, 2017, after lengthy negotiations to extend Fegan's employment beyond its term ending December 31, 2017, Plaintiff terminated Fegan, initiated a JAMS arbitration seeking money damages, and filed its Complaint for Injunctive Relief in the Los Angeles County Superior Court, Case No. BC 653140. (*Id.*¶¶ 3, 25.)[1] Plaintiff's Demands for JAMS Arbitration are premised essentially upon the same allegations set forth in Plaintiff's Complaint for Injunctive Relief.

Plaintiff's Complaint against Fegan contains only a single cause of action for "Preliminary and Permanent Injunctive Relief Pursuant to Code Civ. Proc., §§ 525-27." (*Id.* ¶¶ 51-66.) Plaintiff's claims for injunctive are premised exclusively upon a noncompetition covenant (section 8.1) and a nonsolicitation covenant (section 8.2) in the parties' APA. (Compl. ¶¶ 55-56.) Specifically, Plaintiff's Complaint seeks an injunction to prevent Fegan from engaging in any of the following:

> (a) "Soliciting, raiding, enticing, inducing, or otherwise persuading any ISE employee, affiliate, or representative to end their relationship with ISE, or be directly or indirectly involved in the ownership, management,

---

[1] *See* Complaint for Injunctive Relief (Dkt. 1-1) and JAMS Demands for Arbitration attached thereto (Dkt. 1-1, pp. 24-96.)

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

operation, control, employment, or any other involvement with a business organization that competes with ISE in the non-competitive territory." (Compl., Prayer for Relief, ¶ A(a) at 21:1-6.)

(b) "Competing with ISE by directly or indirectly owning, managing, operating, joining, controlling, or participating in the ownership management, operation or control, or being involved as a director, officer, employee, partner, or consultant, of any profit or non-profit business that competes with ISE in the sports marketing, sports representation, sports recruiting, and/or sports business management fields. This includes owning any equity interest in such a firm or business." (Compl., Prayer for Relief, ¶ A(b) at 21:7-14); or

(c) "Competing with ISE in his individual capacity by directly or indirectly soliciting NBA players, coaches, or their agents and representatives that he currently does not represent, or to do anything to expand the representation of his current NBA clients under existing SPACs in a way that would be competitive to ISE." (Compl., Prayer for Relief, ¶ A(c) at 21:15-20).

On March 28, 2017, Fegan removed Plaintiff's Complaint filed in the Los Angeles County Superior Court to this Court. (Dkt. 1.)

## III. LEGAL STANDARD

The Court must dismiss a plaintiff's Complaint if it does not "state a claim upon which relief can be granted." Fed. R. Civ. P 12(b)(6). Although the "court must accept as true all of the allegations contained in a complaint," that tenet "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1937, 1949, 173 L. Ed. 2d 868 (2009).

Thus, Rule 12(b)(6) provides for dismissal of a claim if, as a matter of law, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); *see also Parks Sch. of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). For example, the court granted a Rule 12(b)(6) motion to dismiss where plaintiff filed a declaratory relief action, and the court determined that "the requested relief is unavailable" as a matter of law. *Holmes High Rustler, LLC v. Gomez*, No. 15-CV-02086-JSC, 2015 WL 4999737, at *7 (N.D. Cal. Aug. 21, 2015) ("[b]ecause the requested relief is unavailable, Plaintiff fails to state a cognizable claim for relief under the civil RICO statute").

## IV. ARGUMENT

### A. The NBPA Has The Sole Authority to Determine Who May Serve as an NBPA Certified Player Agent Under the NLRA.

All NBA players are represented by the NBPA, a labor union.[2] Under Section 9(a) of the National Labor Relations Act (NLRA), only a duly-appointed labor union may negotiate pay, benefits, and other conditions of employment on behalf of unionized employees. 29 U.S.C. § 159(a); *NLRB. v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180, 87 S. Ct. 2001, 2006, 18 L. Ed. 2d 1123 (1967). Therefore, as courts have recognized, "the NBPA has the exclusive authority to negotiate individualized salaries and conditions of employment on behalf of each player." *Collins*, 850 F. at 1468.

---

[2] "The NBPA is a labor organization within the meaning of § 2 of the National Labor Relations Act (NLRA), 29 U.S.C. § 152. For more than thirty years the NBA has recognized the NBPA as the exclusive bargaining representative for all professional basketball players employed by each of the NBA member teams, pursuant to § 9 of the NLRA, 29 U.S.C. § 159." *Collins*, 850 F. Supp. at 1471.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

Under Section 9 of the NLRA, "[a] union may delegate some of its exclusive representational authority." *Id.* at 1475. The NBPA has done that by delegating some of its exclusive representational authority to certified NBA player Agents like Fegan, and only those certified Agents can lawfully represent, solicit, sign, and receive NBA players. *Id.*; *see* 29 U.S.C. § 159(a); *cf. White v. Nat'l Football League*, 92 F. Supp. 2d 918, 924 (D. Minn. 2000) ("Player agents are permitted to negotiate player contracts in the NFL only because the NFLPA has delegated a portion of its exclusive representational authority to them"). Recognizing that "[a]gents perform a function—the representation of union members in the sale of their labor—that in most nonentertainment industries is performed exclusively by unions," the Supreme Court has explicitly authorized this practice. *See H. A. Artists & Assocs., Inc. v. Actors' Equity Ass'n*, 451 U.S. 704, 721, 101 S. Ct. 2102, 2112, 68 L. Ed. 2d 558 (1981).

Fegan's right and ability as an NBPA certified Player Agent to represent, solicit, sign and receive current and prospective NBA Players is established exclusively by the NBA Collective Bargaining Agreement (December 2011) (the "CBA"), which was entered into by and between the NBPA and the NBA. (*See* CBA Article XXXVI §§ 1-6.) In particular, Article XXXVI of the CBA, entitled "Player Agents," authorizes only certified Player Agents to negotiate player contracts between a player and a team. Section 1 of that Article provides as follows:

> The NBA shall not approve any Player Contract between a player and a Team unless such player (a) is represented in the negotiations with respect to such Player Contract ***by an agent or representative duly certified by the Players Association in accordance with the Players Association's Agent Regulation Program*** and authorized to represent him, or (b) acts on his own behalf in negotiating such Player Contract.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

(CBA, Article XXXVI, § 1 at 371 (emphasis added).)[3]

The CBA incorporates by reference the NBPA Player's Association's Agent Regulation Program, which is established and governed by the NBPA Regulations Governing Player Agents (as amended February 2016)(the "NBPA Regulations").[4] The NBPA Regulations are "a comprehensive system of agent certification and regulation," established "to insure that players would receive agent services that meet minimum standards of quality at uniform rates." *Collins*, 850 F. Supp. at 1471. The NBPA's primary objectives in promulgating and enforcing the NBPA Regulations include the following:

> (b) To afford each Player the opportunity to select a certified Player Agent who, in turn, has agreed to comply with these Regulations, to represent and advise Players as a fiduciary with honesty, competency and loyalty ….
>
> (d) To establish and enforce uniform standards of conduct and fiduciary responsible applicable to all certified Player Agents ….

(NBPA Regulations Introduction, § A at 2.) The NBPA Regulations further provide that "the activities or conduct of player agents that are governed by these Regulations include … any other activity or conduct which directly bears upon the player agent's integrity, competency or ability to properly represent individual NBA players …." (*Id.* § 1 at 5.)

---

[3] A true and correct copy of Article XXXVI the CBA is attached as Exhibit A to Defendant's Request for Judicial Notice ("RJN") filed concurrently herewith.

[4] A true and correct copy of the NBPA Regulations is attached as Exhibit B to Defendant's RJN.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

Echoing Article XXXVI of the CBA, the NBPA Regulations restrict the representation of players to Player Agents certified by the NBPA:

> No person (other than a player representing himself) shall be permitted to conduct individual contract negotiations on behalf of a player (including a rookie) and/or assist in or advise with respect to such negotiations with NBA clubs after the effective date of these Regulations ***unless he is [ ] currently certified as a player agent pursuant to these Regulations.***

(NBPA Regulations §1 at 5); *see also Collins*, 850 F. Supp. at 1472.

The NBPA Regulations, among other things, establish (a) the qualifications and procedures for applying for certification, (b) the grounds and procedures for de-certification of a Player Agent, and (c) the criteria for expiration if an individual's Player Agent status. Any disputes regarding Player Agents are resolved pursuant to the arbitration procedures set forth in Section 5 of the NBPA Regulations. (*See* NBPA Regulations.)

Section 2 of the NBPA Regulations establishes the "Requirements for Certification" and describes the application and appeal procedure by which the NBPA certifies Player Agents. (NBPA Regulations § 2 at 6-8.) Once certified, the Regulations authorize a Player Agent to, among other things, "provide[ ] representational services to NBA players (including 'rookies') by conducting individual contract negotiations, assisting or advising in connection with such negotiations with NBA teams, and/or administering, advising, or enforcing agreements reached as a result of those negotiations." (NBPA Regulations, Introduction at p. 1.)

In addition to establishing the sole process for certifying Player Agents, the NBPA Regulations establish the ***exclusive*** procedure for suspending or revoking the right to represent, solicit, sign, and receive NBA players. Section 2 authorizes the

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

NBPA to revoke the certification of any Player Agent "based upon information brought to its attention or acting on its own initiative." (NBPA Regulations § 2.E at 8.) The NBPA may take action "suspending or revoking such certification on any ground that would have provided a basis for denying certification in the first place (see Section 2.C) and/or for conduct prohibited in Section 3.B(a)-(q) of the[ ] Regulations." *Id*. Those grounds include "conduct which reflects adversely on his or her fitness as a player agent or jeopardizes the effective representation of NBA players." (NBPA Regulations § 3.B(13) at 12.) In making its determinations, the NBPA may consider "information obtained from any person having knowledge of the action or conduct of the player agent in questions, including . . . persons associated with professional or intercollegiate basketball." (NBPA Regulations §6.B at 17.) Section 2 establishes that "[t]he appeal to [NBPA] arbitration shall constitute the ***exclusive*** method of challenging any proposed suspension or revocation of certification." (NBPA Regulations § 2.E at 8 (emphasis added).)

**B. <u>Plaintiff's Complaint Impermissibly Seeks to Terminate or Limit Fegan's Right to Represent and Sign NBPA Players</u>.**

On its face, Plaintiff's Complaint for Injunctive Relief asks the Court to terminate, or otherwise limit and encumber Fegan's right to act as an NBPA certified Player Agent. (Compl. ¶¶ 55-56, Prayer for Relief, ¶¶ A(a)-(c).)

For over 25 years, Fegan has been an NBPA certified Player Agent. (Compl. ¶¶ 5, 25). As a Player Agent, Fegan provides representational services to NBA players and rookies, including conducting individual contract negotiations, assisting or advising in connection with negotiations with NBA teams, and administering, advising, and enforcing agreements reached as a result of those negotiations. (NBPA Regulations, Introduction at 1.)

Plaintiff's injunctive relief requested in the Complaint would divest Fegan of his right to continue to act and serve as an NBPA certified Player Agent. Specifically, Plaintiff seeks to prevent Fegan from, among other things, "directly or

indirectly owning, managing, operating, joining, controlling, or participating in the ownership, management, operation, or control . . . of any profit or non-profit business . . . in the sports marketing, sports representation, sports recruiting, and/or sports business management fields." (Compl., Prayer for Relief, ¶ A (b) at 21:7-13.)

Fegan also has a right under the CBA to solicit and sign new NBA player clients on a going forward basis. (CBA Article XXXVI, § 1.) Though this right belongs to Fegan, it exists for the benefit of the NBA players, who are entitled to seek representation by the certified Player Agent of their own choosing. (NBPA Regulations at 2 §(A)(b).)

Plaintiff's Complaint seeks to revoke that right which the NBPA has granted to Fegan and guaranteed to its players. Plaintiff seeks to prevent Fegan from, among other things, "directly or indirectly soliciting NBA players, coaches, or their agents and representatives that he currently does not represent, or to do anything to expand the representation of his current NBA clients under the existing [Standard Player Agent Contracts]." (Compl., Prayer for Relief, ¶ A (c) at 21:15-19.)

Under Section 9 of the NLRA, "[t]he decision whether, to what extent, and to whom to delegate [its] authority" to represent union members in their negotiations "lies solely with the union." *Collins*, 850 F. Supp. at 1475; 29 U.S.C. § 159(a); *see also Morio v. N. Am. Soccer League*, 501 F. Supp. 633, 640 (S.D.N.Y.), *aff'd*, 632 F.2d 217 (2d. Cir. 1980) ("[O]nly the Union has the right to waive, if it so desires and to the extent it so desires, its right to be the exclusive bargaining representative."). Courts, including those of this district, therefore deny injunctive relief that would interfere with the right of union-certified agents to represent, solicit, sign, and receive athlete clients.

In a case closely analogous to this one, the sports agency of Steinberg, Moorad & Dunn ("SMD") sued David Dunn, a high-profile NFL agent who left SMD. SMD asserted a number of California state law claims, including breach of contract claims. *Steinberg, Moorad & Dunn v. Dunn*, CV 01-7009 RSWL at 2

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

(C.D. Cal., Feb. 6, 2003) (Dkt. 1033), *vacated on other grounds*, 136 F.App'x 6, 10 (9th Cir. 2005).[5] In that case, SMD requested that the court issue an injunction against Dunn continuing to act as an NFL player agent. *Id.*, at 2-3. Relying on Section 9 of the NLRA, the Court denied the injunction requested by Dunn's former employer:

> The Court finds that the [National Football League Players Association] is the exclusive representative of NFL players, and that it delegates a portion of such authority to Certified Contract Agents to negotiate on behalf of the players. ***The proposed injunction would impermissibly usurp that statutory authority by denying the NFLPA the right to appoint or decertify Certified Contract Advisors according to its own regulations.***

*Id.* at 3.

Courts have rejected other challenges to the NBPA and other players union's decisions to certify or decertify agents. For example, in the *Collins* case, Kareem Abdul-Jabbar's former agent, Thomas Collins, challenged the NBPA's decision not to recertify him as a Player Agent. Collins had ceased practicing as an agent pending the resolution of litigation with Abdul-Jabbar, and the NBPA revoked his certification for failure to pay agent dues and attend a mandatory seminar. *Collins*, 850 F. Supp. at 1474. Collins again applied to be certified as a Player Agent, and after an extensive hearing and investigation, the NBPA denied Collins' application for certification. *Id.*

Collins sued the NBPA in federal district court, challenging the NBPA's decision to deny him Player Agent certification and the NBPA Regulations

---

[5] A true and correct copy of the District Court's Order is attached as Exhibit C to Defendant's RJN.

themselves under the Sherman Act, as well as several state tort theories. *Id*. at 1471. The Court rejected Collins' challenge, explaining that:

> A union may delegate some of its exclusive representational authority on terms that serve union purposes, as the NBPA has done here. ***The decision whether, to what extent and to whom to delegate that authority lies solely with the union.***

*Id*. at 1475 (emphasis added). The Court noted that "[h]ad Collins challenged the [NBPA's] findings in arbitration, the method prescribed by the Regulations themselves, then he might have been able to have had some of the findings reversed." *Id*. at 1481.

Like the failed claims asserted against certified player agents in the *Steinberg* and *Collins* cases, Plaintiff's single cause of action for injunctive relief is tantamount to "no more than another challenge of the NBPA's . . . monopoly" over the certification and regulation of Player Agents. *Id*. Accordingly, as in those cases, Plaintiff's attempt to usurp the exclusive powers granted to the NBPA should be rejected as a matter of law.

## V. CONCLUSION

The injunctive relief sought by Plaintiff interferes with Fegan's right as an NBPA certified Player Agent to continue to represent NBA players, and to continue to have the opportunity and right to solicit, sign, and receive new NBA player clients on a going forward basis. As a result, Plaintiff's Complaint for Injunctive Relief impermissibly usurps the exclusive power and authority granted to the NBPA under federal labor law. Thus, Plaintiff's Complaint fails as a matter of law to state a claim upon which relief can be granted, and should be dismissed in its entirety. *See* Fed. R. Civ. P. 12(b)(6).

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

DATED: March 31, 2017

Respectfully submitted,

KINSELLA WEITZMAN ISER
KUMP & ALDISERT LLP

By: /s/ Michael J. Kump
Michael J. Kump
Attorneys for Defendant DANIEL FEGEN

/382510