JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDEPENDENT SPORTS & ENTERTAINMENT, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL FEGAN,<br><br>Defendant. | Case No. CV 17-02397-AB (PJWx)<br><br>**ORDER GRANTING MOTION FOR REMAND AND DENYING MOTION TO DISMISS** |

Before the Court is Plaintiff Independent Sports & Entertainment LLC's ("ISE") Motion for Remand (Dkt. No. 12) and Defendant Daniel Fegan's ("Fegan") Motion to Dismiss. (Dkt. No. 8.) Oppositions and replies were filed for both motions. The Court heard oral argument on May 1, 2017. For the following reasons, the Court **GRANTS** the motion for remand and **DENIES** the motion to dismiss.

**I.  BACKGROUND**

ISE alleges that Fegan breached a non-competition agreement, and in this action seeks a preliminary injunction, pending a related arbitration, barring Fegan from continuing to breach that agreement. The relevant allegations of the Complaint ("Compl.," Dkt. No. 1-1) are as follows.

1.

ISE is a sports management company that represents athletes in several leagues, including the National Basketball Association ("NBA"). Compl. ¶ 4. Fegan is a well-known sports agent who represents NBA players. *Id.* ¶ 5. In 2013, ISE and Fegan entered into an Asset Purchase Agreement ("APA") whereby ISE agreed to purchase Fegan's basketball business assets and goodwill in exchange for cash and stock in ISE. Fegan also agreed to become an employee of ISE so he could continue to represent his NBA clients as an employee of ISE. *Id.* ¶ 5.[1]

The APA included non-competition provisions whereby Fegan promised, as relevant, "[t]o refrain from directly or indirectly owning, managing, operating, controlling, or working for any business or organization that engages in sports marketing, representation, recruiting, or that otherwise competes with ISE from March 15, 2013 through February 15, 2018 ('Non-competition Period')." *Id.* ¶ 31; s*ee also* APA (Bauman Decl. (Dkt. No. 12-3) Exh. F), § 8.1. The APA also has a non-solicitation agreement whereby Fegan agreed to not compete with ISE by soliciting any of ISE's employees, agents, or consultants. Compl. ¶ 31; APA § 8.2.

ISE alleges that Fegan violated the APA by, among other things, running a side business in violation of the noncompetition clause, undermining ISE employees' loyalty to ISE, repeatedly violating the non-solicitation clause, and otherwise failing to perform satisfactorily, so ISE terminated his employment for cause on March 10, 2017. *Id.* ¶ 49. The same day, pursuant to an arbitration clause in the APA, ISE brought two arbitrations against Fegan for his breach of the APA and the employment agreement. In those arbitrations, ISE seek damages and an injunction to enforce the noncompetition agreement. *Id.* ¶ 2.

Also on March 10, 2017, ISE filed this action in state court. ISE's Complaint states only one cause of action: for a preliminary and permanent injunction pending the arbitrations, pursuant to Cal. Code Civ. Proc. §§ 525-527. ISE states that it "only

---

[1] The APA was amended, but for simplicity the Court will refer to the APA and its amendments as the APA.

2.

seeks injunctive relief to enforce the non-compete covenant and maintain the status quo" until the arbitrations are concluded or the noncompetition covenant expires on February 15, 2018. *Id.* ¶ 59. As relevant to the motions, the Complaint seeks an order prohibiting Fegan from:

> b. Competing with ISE by directly or indirectly owning, managing, operating, joining, controlling, or participating in the ownership management, operation or control, or being involved as a director, officer, employee, partner, or consultant, of any profit or non-profit business that competes with ISE in the sports marketing, sports representation, sports recruiting, and/or sports business management fields. This includes owning any equity interest in such a firm or business.
>
> c. Competing with ISE in his individual capacity by directly or indirectly soliciting NBA players, coaches, or their agents and representatives that he currently does not represent, or to do anything to expand the representation of his current NBA clients under existing SPACs in a way that would be competitive to ISE.

Compl. Prayer or Relief ¶ A(b) and A(c), 21:7-20.

On March 17, the state court issued a TRO enjoining Fegan from engaging in the activities referenced in paragraph (b).

On March 28, 2017, Fegan removed the action to federal court on the ground that it is completely preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. ISE then filed a motion for preliminary injunction to bar Fegan from:

> engaging in, committing, performing, directly or indirectly, by any means whatsoever, the following acts: owning, managing, operating, controlling, or ***having any involvement with a business organization that competes with ISE*** in violation of a valid

3.

noncompete clause during the non-competition time period, which
expires on February 15, 2018.

*See* Dkt. No. 11-10, 3:12-15.

Fegan now moves to dismiss the Complaint on the same ground on which he removed it: that it is completely preempted by the LMRA. ISE argues that its claim is not completely preempted and seeks an order remanding the action back to state court.

## II. LEGAL STANDARD

### A. Removal Jurisdiction

A defendant may remove from state to federal court any civil action over which the district court would have had original jurisdiction. 28 U.S.C. § 1441(a). Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal jurisdiction exists only if the federal question appears on the face of the plaintiff's "well-pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, (1987). Under the well-pleaded complaint rule, a defense based on federal law, including the defense of preemption, does not establish a federal question and does not render a state law action removable. *Id.* at 393 ("it is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.").

However, under the "complete preemption" doctrine, an "independent corollary" to the well-pleaded complaint rule that applies in only very narrow circumstances, *Caterpillar*, 482 U.S. at 393, a federal defense can give rise to a federal question. This doctrine provides that when "the pre-emptive force of a statute is so 'extraordinary'" that it is deemed to *completely* preempt state law, "an ordinary state common-law complaint [is converted] into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 65 (1987). Under the doctrine, "[o]nce an area of state law has

4.

been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.*

Section 301 of the LMRA is one of three statutes that the Supreme Court has found to completely preempt state law. *See Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6-7 (2003) (because of its "unusually 'powerful' pre-emptive force," § 301 "not only pre-empt[s] state law but also authoriz[es] removal of actions that sought relief only under state law"). Thus, if a state law claim is completely preempted by § 301, the state law cause of action necessarily becomes a federal one and can be removed. *Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401, 1406 (9th Cir. 1991), *as amended on denial of reh'g* (May 4, 1992).

## III. DISCUSSION

Given that state law claims completely preempted by § 301 arise under federal law and are therefore removable, the question becomes whether ISE's claim is in fact subject to the completely-preemptive force of § 301. The Court reviews the purpose of § 301 and preemption jurisprudence to guide its analysis.

### A. Complete Preemption Under § 301

The Ninth Circuit's discussion of the history, purpose, and scope of § 301 preemption in *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024 (9th Cir. 2016) and *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683 (9th Cir. 2001), *as amended* (Aug. 27, 2001) are particularly instructive, so the following discussion draws heavily from them.

Section 301 states: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). Thus, § 301 expressly confers on federal courts jurisdiction over breach of contract suits between labor unions and employers.

But the Supreme Court has construed § 301 to do more than confer on federal

5.

courts subject matter jurisdiction over labor disputes.  The Court has stated that the policies that animate § 301 include to ensure that parties to collective bargaining agreements can be certain about the terms of those agreements, that CBAs could be readily enforced, and, relatedly, to avoid prolonging labor disputes and to promote "industrial peace." *See Local 174, Teamsters of Am. v. Lucas Flour Co.,* 369 U.S. 95, 103-04 (1962) (discussing purpose of § 301); *see also Livadas v. Bradshaw*, 512 U.S. 107, 122 (1994) (§ 301 preemption doctrine is designed "in large part to assure that agreements to arbitrate grievances would be enforced, regardless of the vagaries of state law and lingering hostility toward extrajudicial dispute resolution."). Accordingly, to avoid the disruptive effect that divergent state laws would have on these purposes, "the subject matter of § 301(a) 'is peculiarly one that calls for uniform law.'" *Lucas Flour Co.*, 369 U.S. at 103.  Thus, § 301 mandates that federal common law govern the enforcement and interpretation of CBAs, and that this federal common law preempts state contract law. *Id.*

In *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202 (1985), the Court further explained that § 301 should be "understood . . . as a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts. " *Lueck*, 471 U.S. at 209.  To effectuate the goal of establishing uniform federal labor law, the Court expanded the scope of § 301 preemption  beyond cases specifically alleging a violation of a labor contract to claims whose resolution "is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Id.* at 220.  Stated similarly, "[t]o give 'the policies that animate § 301 . . . their proper range . . . the pre-emptive effect of § 301 . . . [expands] beyond suits alleging contract violations' to state law claims grounded in the provisions of a CBA or requiring interpretation of a CBA." *Kobold*, 832 F.3d at 1032 (citing *Lueck*, 471 U.S. at 210-11).

Importantly, however, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted

by § 301." *Lueck*, 471 U.S. at 211. "A state law claim is not preempted under § 301 unless it necessarily requires the court to interpret an existing provision of a CBA that can reasonably be said to be relevant to the resolution of the dispute." *Cramer*, 255 F.3d at 693.

In *Kobold*, the Ninth Circuit summarized its two-step inquiry to analyze § 301 preemption of state law claims:

> First, a court must determine "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted, and [the] analysis ends there." [*Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007).] If the court determines that the right underlying the plaintiff's state law claim(s) "exists independently of the CBA," it moves to the second step, asking whether the right "is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.' " *Id.* (quoting *Caterpillar*, 482 U.S. at 394[]). Where there is such substantial dependence, the state law claim is preempted by § 301. If there is not, then the claim can proceed under state law. *Id.* at 1059–60.

*Kobold*, 832 F.3d at 1032-33 (the "*Burnside* factors" or "*Kobold* test").

**B. ISE's Claim Is Not Preempted by the LMRA**

The particular circumstances of this case do not fit squarely within any of the cases the parties cite, some of which are discussed below. The cases Fegan relies upon (*Collins*, *Black*, and *White*) involve disputes between an agent and a union over the union's authority to regulate or discipline agents; here, the union (the NBPA) is not a party and this case presents no formal challenge to any act it has – or has not – taken with respect to Fegan's status as a player agent. *Steinberg, Moorad & Dunn v. Dunn*, CV 01-07709 RSWL (C.D. Cal., Feb. 6, 2003) is the case closest to this one

7.

because it evidently involves an agency attempting to enjoin a former agent from working at a competing agency, but as discussed below, it is not persuasive.

The cases ISE relies upon (*Burnside; Cramer; Sprewell v. Golden State Warriors*, 266 F.3d 979 (2001)) concern disputes between a represented employee and the employer over the employee's state-law right to compensation, or state-law tort claims. Here, neither party is an employee represented by the union, and the claim does not involve either statutory compensation rights or torts.

In short, the dispute here does not involve either a direct challenge to a union's authority to certify and discipline its agents, nor is it a dispute between a union-represented employee and his or her employer. This dispute concerns a union's agent and a third party.

Nor does the *Kobold* test, as phrased, map neatly onto this case: the first step refers to the right conferred on the "employee," meaning the union member, but again, neither party to this case is a union member. Regardless, the court will apply the *Kobold* test mindful of its focus on the *plaintiff's claim* and of the purpose behind § 301's preemptive force.

### 1. The Right ISE Is Suing Upon Does not Exist Solely as a Result of the CBA.

"To determine whether a right is independent of a CBA—the first *Burnside* factor—a court must focus its inquiry on 'the *legal* character of a claim, as 'independent' of rights under the collective-bargaining agreement [ ] and not whether a grievance arising from 'precisely the same set of facts' could be pursued.' [*Livadas*, 512 U.S. at 123](emphasis added) (internal citation omitted). Only if the claim is 'founded directly on rights created by [a] collective-bargaining agreement[ ]' does § 301 preempt it. *Caterpillar*, 482 U.S. at 394." *Kobold*, 832 F.3d at 1033.

Here, the right ISE is suing upon – Fegan's promise, in the APA, to not compete with ISE in specified ways – does not exist as a result of the CBA. Rather, it exists as a result of the APA. Without the APA, ISE would have no right to enforce

and therefore no claim against Fegan. This conclusion is muddied by the fact that Fegan's promise not to compete may impact *his ability* to uphold his obligations as a player agent – a status Fegan dervies from the CBA – but this does not transform ISE's claim for breach of the APA into a claim "founded directly on rights created" by the CBA.

None of Fegan's contrary arguments has merit. His first argument is two-fold: that enforcing the non-competition agreement would interfere with Fegan's right to act as a player agent under the CBA and NBPA regulations, and that this, in turn, would interfere with the NBPA's authority to certify, decertify, and otherwise discipline agents to whom it has delegated its exclusive authority to represent players. It does appear likely that enforcing the noncompetition agreement would hamstring Fegan's ability to carry out his duties as an agent. Even the least-restrictive portion of the requested injunction – to bar Fegan from working for a business that competes with ISE – arguably conflicts the NBPA's purported requirements that its agents maintain a full support and office staff and work with two additional NBPA Certified Player Agents. *See* Fegan Decl. (Dkt. No. 1-5) ¶ 7.[2] But this does not change the fact that ISE's claim against Fegan is founded on ISE's state law contractual rights. That ISE's right to enforce its contract with Fegan under state law would impact Fegan's ability to perform consistent with the CBA is incidental and does not transform ISE's state law claim for breach of the APA into a claim based on the CBA.

Nor would enforcing Fegan's promise to not compete with ISE impinge on the NBPA's plenary authority to certify, decertify, and discipline its agents. As Fegan points out, under the National Labor Relations Act, 29 U.S.C. § 152 *et seq.*,

---

[2] At oral argument, counsel stated that Fegan's claim that the NBPA has these requirements is based on Article 36 of the CBA and on the NBPA Regulations. However, Article 36 does not seem to be in the briefing on these motions and the Regulations – counsel didn't point to any particular section – do not appear to contain such requirements. However, for purposes of these motions the Court assumes Fegan's claim is true.

9.

("NLRA"), labor organizations like the NBPA have the exclusive right to negotiate pay, wages, and other conditions of employment on behalf of unionized employees. *See* 29 U.S.C. § 159(a) (granting a bargaining unit the exclusive right to represent employees in it). Unions may delegate that authority to agents. *See H. A. Artists & Assocs., Inc. v. Actors' Equity Ass'n*, 451 U.S. 704, 721 (1981) ("Agents perform a function – the representation of union members in the sale of their labor – that in most nonentertainment industries is performed exclusively by unions"). Unions also have the sole authority to establish rules and requirements for their agents, such as certification requirements, and to discipline them. *See, e.g., Collins v. Nat'l Basketball Players Ass'n*, 850 F. Supp. 1468, 1475 (D. Colo. 1991), *aff'd*, 976 F.2d 740 (10th Cir. 1992) ("A union may delegate some of its exclusive representational authority on terms that serve union purposes, as the NBPA has done here. The decision whether, to what extent and to whom to delegate that authority lies solely with the union."). But ISE does not seek to decertify or otherwise discipline Fegan; the NBPA still retains that authority. Therefore, the relief ISE seeks would not disturb NBPA's monopoly over labor negotiations or its derivative plenary authority over regulating its agents.

The cases Fegan relies upon are not analogous because they all involve direct challenges to a union's authority over its agents, or disputes over the scope of a CBA. In *Collins*, for example, the NBPA decertified and declined to recertify Collins as a player agent. *Collins*, 850 F. Supp. at 1473-1475. Collins claimed that the NBPA violated the Sherman Antitrust Act, "[in] effect, contest[ing] the union's monopolization of the representation of basketball players in their negotiations with NBA teams." *Id*. at 1474. The court rejected that challenge, finding that "the NLRA specifically empowers the exclusive bargaining representative to 'monopolize' the representation of all employees in the bargaining unit," and that this authority extends to promulgating and executing regulations that govern agent certification. *Id.* at 1475-1476. The court simply found that the union's agent certification regulations were immune from antitrust review. This case, by contrast, does not involve the NBPA or

any challenge – through antitrust law or otherwise – to its formal authority over its agents. As such, *Collins*'s discussion of the NBPA's exclusive authority to regulate its agents is not germane to this case. Relatedly, that the NBPA is exempt from the Sherman Act and thus can monopolize the representation of basketball players has little bearing on this case. The relief ISE seeks might hamper Fegan's ability to fulfill his duties as an agent, but in no way impinges on the NBPA's authority over Fegan's certification or to discipline him.

In *Black v. Nat'l Football League Players Ass'n*, 87 F. Supp. 2d 1 (D.D.C. 2000), an agent sued the players' union, claiming that its disciplinary procedures against him were unlawful. The court found the claim preempted by the LMRA insofar as it contested "the way in which NFLPA has conducted and will conduct his disciplinary proceeding," because that question turned on "the application of the regulations" to his conduct and therefore was dependent on the CBA. *Id.* at 4. Again, because this case does not involve a challenge to discipline imposed by the NBPA, this reasoning does not apply.

In *White v. Nat'l Football League*, 92 F. Supp. 2d 918 (D. Minn. 2000), a group of NFL teams initiated a special masters proceeding against the San Francisco 49ers and certain player agents, claiming that they entered into undisclosed player compensation agreements in violation of the CBA. *White*, 92 F. Supp. 2d at 920. The question before the district court was whether the agents were bound by the CBA even though they weren't parties to it. The court found that the agents were bound by the CBA the union entered into in part because "player agents are permitted to negotiate player contracts in the NFL only because the NFLPA has delegated a portion of its exclusive representational authority to them." *Id.* at 924. But whether Fegan, as an agent, is bound by the CBA is not in issue here and furthermore, that question does not shed any light on whether ISE's claim is preempted.

Finally, Fegan relies on a post-trial ruling in *Steinberg, Moorad & Dunn v. Dunn*, CV 01-07709 RSWL (C.D. Cal., Feb. 6, 2003). There, it appears that a sports

11.

agency sought an injunction to prevent an former employee from working for another agency. The court denied the injunction on numerous grounds, including that "[t]he proposed injunction would impermissibly usurp [the NFLPA's] statutory authority by denying he NFLPA the right to appoint or decertify Certified Contract advisors according to its own regulations." *See* Order 3:17-21 (Dkt. No. 21, Exh. D). However, it suffices to say that the *Steinberg, Moorad & Dunn* case was far more complicated than this one, and the injunction was denied on several bases; indeed, preemption was the last basis addressed. Furthermore, the Order devoted only two conclusory sentences to the preemption question, so it is not persuasive. For these reasons, the court's denial of the injunction in *Steinberg, Moorad & Dunn* does not aid this court in its decision.

In summary, under the first step of the *Kobold* test, the court considers the legal character of the plaintiff's claim to ascertain whether it is founded directly on rights created by the CBA. The nature of ISE's claim is breach of contract, and the contract Fegan allegedly breached is the APA, not the CBA. Therefore, ISE's claim is "directly founded" on the APA, not on the CBA. Fegan focuses on the collateral consequences of the remedy ISE seeks, claiming that it would, as a practical matter, interfere with his ability to perform as an agent under the CBA, but that consideration is not relevant under the *Kobold* analysis. Fegan also contends that the relief sought would usurp the NBPA's exclusive authority to certify, decertify, and discipline its agents, but this is not so: the injunction requested would not strip Fegan of his certification or otherwise discipline him as an agent; the NBPA retains its formal certification and disciplinary authority over him. Therefore, the first step of the *Kobold* test does not establish that ISE's claim is preempted.

### 2. ISE's Claim Is Not Substantially Dependent on Analysis of the CBA.

Nor does the second step of the *Kobold* analysis establish complete preemption. Where, as here, the court determines that the right underlying the plaintiff's state law

claim " 'exists independently of the CBA,' it moves to the second step, asking whether the right 'is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.' " *Kobold*, 832 F.3d at 1032-33 (citations omitted). A claim is substantially dependent on a CBA where it is "grounded in" the CBA or "require[s] interpretation of" the CBA. *Id.* at 1032. Where the analysis of the claim is substantially dependent on analysis of a CBA, it is preempted.

Here, ISE claims that Fegan violated the APA's noncompetition clause. To resolve this claim, a factfinder would look to the terms of the APA's noncompetition clause and examine Fegan's conduct to see if Fegan breached that clause. The factfinder need not even consider or refer to the CBA. ISE's claim is not "grounded in" the CBA, nor does it "require interpretation of" the CBA. ISE's claim is therefore not substantially dependent on analysis of the CBA and is not preempted under the second step of the *Kobold* test.

Fegan responds that ISE's claim requires the court to interpret the CBA because in order to determine whether the claim is preempted, the court must first determine whether the proposed injunctive relief interferes with Fegan's authority as a player agent, authority he derives from the CBA. *See* Opp'n (Dkt. No. 21), 11:6-24. But this proposed analysis is based on a false legal premise: that if the proposed injunction would *interfere with* Fegan's ability to perform as an agent, the claim is preempted. But this reasoning is not rooted in the preemption analysis, which focuses on the nature of the plaintiff's claims. *See Cramer*, 255 F.3d at 691 ("The plaintiff's claim is the touchstone for this analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim."). Section 301 does not bar a court from issuing an order simply because it may, as a practical matter, interfere with a player agent's ability to perform under a CBA.[3] Rather, § 301 bars only state law *claims* that arise

---

[3] Consider these hypotheticals. If an agent declares bankruptcy, certainly the bankruptcy court may distribute the bankruptcy estate to the benefit of the agent's creditors even if that would cause the agent to violate NBPA requirements concerning,

13.

out of a CBA or are substantially dependent on the interpretation of a CBA. *See, e.g., Lueck*, 471 U.S. at 211 ("Of course, not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law."). Likewise, Fegan's proposed analysis does not track the second part of the *Kobold* test. That test does not examine whether the requested relief would interfere in some way with the ability of a party to perform under a CBA; rather, it looks to whether the *plaintiff's claim* is "grounded in" the CBA or "require[s] interpretation of" the CBA. ISE's *claim* that Fegan breached the APA is neither grounded in, nor requires interpretation of, the CBA. Fegan has not pointed to any language in the CBA or the NBPA Regulations relevant to ISE's claim that is ambiguous or otherwise unclear and therefore requires "interpretation."

In summary, ISE's claim for breach of the APA is neither grounded in the CBA, nor does it require interpretation of the CBA, so the claim is not substantially dependent on an analysis of the CBA. Therefore, the second step of the *Kobold* test does not establish that ISE's claim is preempted.

### 3. Finding ISE's Claim Preempted Would Not Further the Purpose of Section 301.

The two-step *Kobold* test establishes that ISE's claim is not preempted. This conclusion is reinforced by considering the purpose of complete preemption under § 301. The foundation of § 301 is a "suit[] for violation of a contract[] between an employer and a labor organization representing employees," that is, a claim for breach of a collective bargaining agreement. Since the APA is not a CBA, this action is clearly not a suit for violation of a CBA. This is simply not a labor dispute.

But as noted, § 301 preempts more than just claims for breach of a CBA. The Supreme Court has found that to advance federal labor policy favoring collective

---

for example, maintaining an office space and other assets. Similarly, if an agent is convicted of a crime, certainly a court may sentence him to imprisonment even though such an order would "interfere" with his ability to perform as a player agent.

14.

bargaining as a way of promoting industrial peace, CBAs must also be *interpreted* according to a uniform body of federal law, and to the exclusion of competing state law, so that negotiating, administering, enforcing, and even litigating CBAs is more predictable. *See, e.g, Lueck,* 471 U.S. at 209-210. Accordingly, § 301's preemptive force reaches beyond straight claims for breach of a CBA, to other claims *based on* rights granted by CBAs, or that require *interpretation of* a CBA. Here, ISE's claim that Fegan breached the APA's noncompetition clause is based on ISE's rights under the APA and is not based on Fegan's rights under the CBA; furthermore, whether Fegan breached the APA can be decided without interpreting the CBA. As such, resolving this dispute will not influence the law under which CBAs are negotiated and enforced, so there is no reason to interject federal law as the decisional law. Stated differently, the application of state law to the question of whether Fegan breached the APA cannot in any way affect how claims under this or any other CBA are resolved, or how this or any other CBA are interpreted. In sum, preempting ISE's claim would not effectuate the goal of establishing uniform federal labor law and would not, therefore, advance the policy goals embedded in § 301.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that ISE's claim against Fegan is not completely preempted by § 301 of the Labor Management Relations Act. Because complete preemption under § 301 was the sole basis of federal jurisdiction over this removed action, the Court **GRANTS** the motion for remand and hereby **REMANDS this matter back to state court.**

The Court **DENIES** the motion to dismiss at moot. All other dates are hereby vacated.

Dated: May 30, 2017

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE